IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Charlie Don Robinson, III, | ) | C/A No.:  5:25-10361-JFA-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| Warden Curtis Earley, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Charlie Don Robinson, III ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 25, 26. On November 25, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 27. After obtaining an extension, ECF No. 36, Petitioner filed a Response in Opposition on January 15, 2026, ECF No. 38, to which Respondent filed a Reply on January 22, 2026. ECF No. 39.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be granted, and this Petition be denied.

I.      Background

Petitioner is currently incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections. ECF No. 1 at 1. He was indicted at the March 2019 term of

the Lexington County Grand Jury on murder. ECF No. 25-1.[1] On March 26, 2019, Petitioner appeared before Judge Walton J. McLeod, IV, for a plea hearing. App. 1.[2] Petitioner was represented by Assistant Public Defender Jason Scott Chehoski, and the State was represented by Assistant Solicitor Sutania Fuller. *Id*. At the start of the hearing, Judge McLeod questioned Petitioner about his education and prior work experience. App. 6. Judge McLeod also asked Petitioner if he was under the influence of any drugs or had received treatment for a mental health condition that would prevent Petitioner from understanding what he was doing today, and Petitioner replied no. *Id*. Judge McLeod then explained to Petitioner that he was in court on a murder charge and the possible sentences he could face, and the constitutional rights Petitioner was giving up by entering a plea, which included his right to a jury trial. App. 6-9. Judge McLeod asked Petitioner if he understood that he was giving up his right to assert a defense and his right to a jury trial, and Petitioner stated he understood. App. 8-9. Judge McLeod asked Petitioner if he wanted a jury trial and Petitioner stated he did not and that he understood that he was giving up his right to assert a defense. App. 9.  Judge McLeod read the indictment for murder, and Petitioner stated he understood the indictment and that he was pleading guilty to murder, that his plea was freely and voluntarily entered, and that he was pleading because he was guilty. App. 9-10. According to the facts presented by the solicitor, on July 11, 2018, law enforcement responded to a 911 call reporting gunshots and a body lying in the road. App. 11. The caller reported he noticed

---

[1] Petitioner was also charged with armed robbery and possession of a weapon during the commission of a violent crime, and these charges were dismissed as part of Petitioner's plea. App. 31.

[2] Citations to "App." refer to the Appendix for Petitioner's guilty plea transcript and the page numbers on the top of the page. That appendix is available at ECF No. 25-2 in this habeas matter.

a four-door vehicle near where the shooting occurred, and the vehicle sped down the road near the highway. *Id*. The caller also stated he noticed a body lying in the road when he was about to pull out of the driveway. *Id*. An officer arrived at the scene and approached the body, and he noticed a gunshot wound to the head and blood on the victim's mouth and stomach. *Id*. The victim was transported to the hospital where he was pronounced dead. *Id*. The victim was difficult to identify due to the injuries to his face, however, he had roman numeral tattoos on his arm that were used to identify him. *Id*.  One set of roman numerals were connected to female co-defendant Morgan Carr's date of birth, and the other date of birth belonged to the victim Robert William All, Jr. ("Victim"). *Id*. Carr and Victim had a prior relationship. App. 13. Law enforcement went to the address listed for Victim  on his DMV, and his roommates identified his tattoos and his identity was confirmed. *Id*. The roommates told the officers Victim borrowed their rental vehicle. *Id*. His roommates also explained Victim had recently started hanging out with Carr again who was a bad influence. *Id*. Law enforcement put out a BOLO for the vehicle, and the vehicle was spotted by an off-duty officer the next day. *Id*. The officer gave chase and the vehicle pulled into a residence and the owner identified Petitioner as the driver of the vehicle. *Id*. Petitioner ditched the vehicle at that point and took off running. *Id*. An occupant at the home also shared with officers that the last time she saw Petitioner he said he was going to kill Victim for leaving him stranded. App. 13-14. There was another female in the vehicle with Petitioner, and she also told officers Petitioner was driving. App. 14. A bag of Petitioner's belongings and Victim's debit card were located on the back porch of the residence where Petitioner abandoned the vehicle. *Id*. The investigation revealed that Petitioner and his co-defendant Carr were heard discussing stealing the car Victim was driving, and Carr sent a text to Victim asking him to pick them up. *Id*. The Victim picked up Petitioner and

3

Carr, and Carr sat in the front seat, Petitioner sat in the back behind Victim, and a second co-defendant Robin Cunningham sat behind Carr. *Id*. A witness who heard the gunshots also identified where the parties were sitting. *Id*. Petitioner was arrested the day after the shooting, and he gave a full confession. *Id*. His co-defendants also implicated Petitioner. *Id*. After the solicitor recited the facts of the case, Petitioner indicated he agreed with the State's general allegations, and Judge McLeod accepted Petitioner's plea to the murder charge. App. 15. After the solicitor recited additional facts in support of the murder charge, and Petitioner's counsel presented arguments in support of a lesser sentence, and Victim's and Petitioner's families made statements to the court, Judge McLeod sentenced Petitioner to 40-years imprisonment. App. 16-45. Petitioner filed a notice of appeal that the South Carolina Court of Appeals ("Court of Appeals") dismissed on June 19, 2019, for failure to provide a sufficient explanation showing that there was an appealable issue as required by Rule 203. ECF No. 25-4.

II.     Procedural History

Petitioner filed his first application for Post-Conviction Relief ("PCR") on January 8, 2020. ECF No. 25-6. Petitioner asserted he was being held in custody unlawfully because of ineffective assistance of counsel. *Id*. at 6.  The State filed a return and motion for a more definite statement on April 1, 2020. ECF No. 25-7. Petitioner amended his PCR application on March 8, 2024, and the State filed an amended return on August 26, 2024. ECF Nos. 25-8, 25-9. A motion hearing was convened on March 3, 2025, before the Honorable Daniel Coble. ECF No. 25-10. Petitioner was present and represented by Attorney Ola A. Johnson, and  Senior Assistant Deputy Attorney General appeared on behalf of the State. *See id.* At the onset of the hearing, Petitioner indicated he wished to withdraw his PCR application. *Id*. The court questioned Petitioner about his withdrawal

4

request to ensure the request was made freely and voluntarily. *Id*. The court also advised Petitioner his allegations would be barred forever if he withdrew his PCR application. *Id*. Petitioner indicated he wished to withdraw his application. *Id*. On March 10, 2025, Judge Coble issued an order dismissing the PCR application with prejudice finding Petitioner's withdrawal of his PCR application was knowing, and freely and intelligently made. *Id*.

### III.     Discussion

#### A.     Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**Ground One**:     Involuntary Plea

Supporting Facts:  Was told by counsel that the sentence would be 85% and would do no more than 30 years. Also did not agree to be classified under two strikes law being that I did not find this out until after being sentenced.

**Ground Two:**     Tainted Indictment/Fruit of the poisonous tree doctrine

Supporting Facts:  All affidavits and warrants only state that I did commit these crime but does not state how detective came to his conclusion, which shows lack of probable cause in violation of the Fourth Amendment, There are defects being that I confessed to what happened but was made out to be a murderer from an accident that happened when I was on dangerous drugs.

**Ground Three:**     Invalid Arrest Warrants / Lack of Probable Cause

Supporting Facts: All warrants and affidavits lack probable cause by detective not stating how he came to his conclusion.

**Ground Four:**     Equal Protection Violation / Newly Discovered Evidence

> Supporting Facts: Equal protection violation comes from both codefendants being indicted for murder but I was charged with murder and sentenced to 40 years, and codefendants murder charge was dropped/dismissed and received one fourth of the time I got. The hand of one is the hand of all. Newly discovered evidence comes from being incompetent before and also being denied access to the institutional law library during Covid-19 lockdown.

ECF No. 1-2 at 5, 7-8, 10. Petitioner asks the Court to vacate his sentence and release him from custody. *Id*. at 15

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

        C.      Habeas Corpus Standard of Review

        1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362  (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

        a.      Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137–44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404–405 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief

8

unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is

9

doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403. When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Where allegations of involuntary guilty pleas are concerned, the United States Supreme Court has held that a guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. at 31). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences' of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business'" *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's

right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). Insofar as the review of claims of ineffective assistance of counsel raised by persons who pleaded guilty is concerned, the United States Supreme Court has stated,

> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . . The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. . . .

*Premo v. Moore*, 562 U.S. 115, 132 (2011).

        2.        Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately

11

exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

      (A)      the applicant has exhausted the remedies available in the courts of the State; or

      (B)      (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See*

*Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:  [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance,

14

the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

## IV.     Analysis

### A.     Procedural Bar

Respondent argues that none of Petitioner's grounds are available for this court to consider due to procedural default and therefore contends Petitioner's habeas Petition should be dismissed. ECF No. 25 at 14-16. As noted *supra*, Petitioner appealed his guilty plea and sentence by filing a notice of appeal that was dismissed by the Court of Appeals for failure to provide a sufficient explanation to merit the appeal. ECF No 25-4. Petitioner also filed a PCR application in which he

raised ineffective assistance of counsel and involuntary guilty plea claims; however, Petitioner withdrew his PCR application, and the court dismissed his PCR application with prejudice on March 10, 2025. ECF No. 25-10. Accordingly, none of the grounds raised in  Petitioner's direct appeal or his PCR application were addressed on their merits. Because Petitioner's Grounds One through Four claims were not raised to or ruled on by the South Carolina appellate courts, these claims are not preserved for review. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722 (1991) (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas). Consequently, federal habeas review of the Ground One through Four claims are barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

B.     Cause and Prejudice

In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  The existence of cause ordinarily turns upon a showing of a factor external to the defense which impeded counsel or Petitioner's compliance with the state procedural rule. *Murray*, 477 U.S. at 488.

 Petitioner contends that he never studied to be a lawyer, and he should not be accountable for his lack of knowledge pertaining to the law. ECF No. 38 at 1.  Petitioner alleges he sent letters to his attorney asking what he needed to fill out in support of his direct appeal, and he did not receive a response until after the deadline expired where he understood that he needed to send in a written explanation of his appeal.  *Id*. Petitioner also claims he would not have withdrawn his

16

PCR application if he knew he would forfeit any rights he had to fight for his case. *Id*. Petitioner alleges he withdrew his application because his mother was subpoenaed to testify at his PCR hearing, but his mother was not able to appear because she was caring for his dying grandmother. *Id*. Petitioner alleges he did not want his mother to "catch a charge" for failing to appear. *Id*. Petitioner also argues the merits of his Grounds One and Four claims. *Id.*

The undersigned finds Petitioner's arguments to be unavailing as courts have found that ignorance of the applicable law or rules and procedures will not excuse the procedural default of a claim. *See Wilson v. Johnson*, No. 1:08CV794 (LMB/TRJ), 2009 WL 2243708, at *3 (E.D. Va. July 22, 2009) ("Courts universally hold that the fact that a petitioner is untrained in the law or unfamiliar with a court's procedural rules does not provide a basis for establishing cause."); *McDonald v. James*, Case No. 8:23-cv-00982-DCC, 2024 WL 1327315, *4 (D.S.C. March 28, 2024) (finding that a petitioner's pro se status or ignorance of law and procedural requirements, does not establish cause to excuse procedural default); *Wilson v. Humphey*, 2006 WL 643154, * 3 (S.D. W. Va. March 10, 2006) ("Neither lack of legal training, nor knowledge of legal procedures constitutes cause to excuse Petitioner's failure to exhaust [] state remedies.").

Petitioner has also failed to demonstrate he is actually innocent of the crimes for which he was convicted, such "that failure to consider the claims will result in a fundamental miscarriage of justice." *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750)); *see also Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir. 1999). The claim of actual innocence must be supported "with new reliable evidence," and "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Petitioner has not offered any new evidence to

17

suggest he is actually innocent, and therefore, he has failed to demonstrate the procedural bar should be excused.

V.     Conclusion and Recommendation

Based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

June 12, 2026                                          Kaymani D. West
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).